EQUITABLE LIFE ASSURANCE
SOCIETY OF the UNITED
STATES, Appellant,

v.

Dan T. LAWRENCE, Appellee.

Supreme Court of Kentucky.

March 14, 1978.

Stephen D. Gray, Henderson, for appellant.

Earl T. Osborne, Paducah, for appellee.

STERNBERG, Justice.

This appeal involves the nature and adequacy of a notice required to be given to terminate a contract of employment. A jury trial in the Marshall Circuit Court resulted in the dismissal of appellee's claim for damages, which he charges to have sus-

tained by reason of the alleged failure of the appellant to properly terminate his employment. On appeal to the Court of Appeals of Kentucky the judgment of the Marshall Circuit Court was reversed. On September 13, 1977, we granted discretionary review.

The questions presented by counsel are:

"Did the trial court commit prejudicial reversible error in its interrogatory instructions to the jury?

Did Lawrence have an affirmative duty to inquire of Equitable about his employment status?

Was the contract terminated by Equitable according to its terms?

If the contract was not terminated according to its terms, then was it breached by Equitable?

If the contract was breached by Equitable, what damages was Lawrence entitled to?"

We find that Lawrence had actual knowledge of the cancellation of his contract of employment. Actual knowledge is sufficient to bring about its termination. Consequently, we do not reach any of the other questions posed by counsel.

In July, 1974, the appellee, Dan T. Lawrence, was employed by the appellant, Equitable Life Assurance Society of the United States, under what is known as a preemployment agreement. Thereafter, on September 1, 1974, he entered into what is known as a 12th edition contract. A controversy arose between the parties and appellee's employment was terminated.

The appellee spent several years in the United States military service. After leaving the service he went to work for the United States Foreign Service in a classified communications section of the Department of State. He attended college and, while doing so, performed odd jobs. Upon graduation he went to work for the "Combined Insurance Company of America" selling travel accident insurance policies, where he worked for about four months before joining Equitable. While employed by Equitable, the appellee worked out of the Jett Agency office and under the direct supervision of D. B. Jett, an agent for the appellant. Justifiably or not, Jett became displeased with Lawrence and on July 1, 1975, told him that he (Lawrence) was through as of June 30, 1975. By letter of the same date Jett advised Lawrence that he was recommending that Lawrence's employment with Equitable be terminated as of June 30, 1975. Lawrence had no doubts but that Equitable would follow Jett's recommendation. Jett also advised Lawrence that he could no longer sell insurance to anyone because his license to sell was being pulled. Thereafter, Lawrence cleaned out his desk, left the agency's office, and ceased to act as an agent for the appellant. Lawrence went back to college, while looking and interviewing for other work.

On July 2, 1975, Lawrence applied for unemployment insurance, representing that his last employer was Equitable and that he last worked on June 30, 1975. On July 8, 1975, Lawrence signed a participation agreement wherein he assigned to one of Equitable's agents at Princeton, Kentucky, the percentage of commissions he would have received had he not been terminated. On July 10, 1975, he wrote a letter to the President of Equitable, which stated in part as follows:

"I was under a 12th edition contract with Equitable from September 1, 1974 to my termination by you on June 30, 1975. * * * If nothing else, my 10 months with the Equitable has been a real education * * * The only other thing I wish to say is that I feel that the Equitable owes me my 12th edition check for July and August as I fulfilled my required production credits through my last evaluation date of 31 May."

By letter dated July 15, 1975, a director of Equitable further notified appellee that his 12th edition contract had been terminated as of June 30, 1975.

As we see the case, the controlling issue is whether Lawrence was duly notified that his employment with Equitable had been terminated as of June 30, 1975. Paragraph XII of the contract under which Lawrence worked provides as follows:

"Unless automatically terminated by expiration or otherwise as herein elsewhere provided, the Agent's employment hereunder may be terminated forthwith at any time at the option of either party hereto by notice to the other, as of the date therein set forth for such termination. Such notice, if from the Agent, shall be sufficient if in writing and delivered in person to the Agency Manager or mailed to him or the Society. Such notice, if from the Society, shall be sufficient if in writing and delivered in person to the Agent or mailed to him at his last known address on file with the Society."

■ It is admitted that Lawrence could terminate the contract at any time. Likewise, it is admitted that Equitable could terminate the contract at its pleasure, provided, of course, proper notice was given. The contract does not provide that the only methods of giving notice are those contained in the contract. The methods of giving notice provided for in the contract are but two of many ways that notice can be given. The specifying of a method of giving notice does not exclude other methods. Actually, one of the methods of giving notice is far from assuring Lawrence that he would ever actually receive written notice of his termination because, under the terms of the contract, the notice is sufficient if mailed to Lawrence at his last known address on file with Equitable, which may or may not have been the address at which he received his mail.

We do not have before us a situation where the agent was of low intellect. The evidence discloses that Lawrence is a man of above-average ability and his conduct indicates him to be a bright and energetic person. He is a college graduate, having graduated from Murray State University with a degree in accounting. At the time of the trial of this action Lawrence was working for the United States Internal Revenue Service. A man of such qualities, that he formerly was employed by the United States in a classified communications section of the Department of State, is not a stumblebum.

58 Am.Jur.2d, Notice, Sec. 4, is as follows:

"What amounts to actual notice.

\* \* \* \* \* \*

It has been said that when a person knows of a thing he has 'notice' thereof, as no one needs notice of what he already knows. But it may be more accurate to say that actual knowledge supersedes a requirement of notice, that there may be actual knowledge acquired in modes which do not amount to notice, and that this knowledge may produce the same effects which the rules of equity attribute to notice.

While extrajudicial proceedings, or proceedings without jurisdiction, do not operate as constructive notice, yet express notice obtained from such proceedings operates the same as notice obtained in any other manner."

In *Mitchell v. First National Bank of Hopkinsville*, 203 Ky. 770, 263 S.W. 15 (1924), this court stated:

"One who has reasonable grounds for suspecting or inquiring ought to suspect and ought to inquire, and the law charges him with the knowledge which the proper inquiry would have disclosed. If a person has knowledge of such facts as would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry, and he fails to do so, he is chargeable with the knowledge which by ordinary diligence he would have acquired."

■ What may be notice to one person may not be notice to another. Each case must stand, or fall, on its own facts. It can hardly be conceived that a person who had any doubt as to whether he had been terminated would not go to the Jett Agency and inquire of Mr. Jett whether his employment had been actually terminated. That is not the way an intelligent person like the appellee would act. The evidence is more than sufficient to demonstrate that Lawrence was fully cognizant on July 1, 1975, that he no longer worked for Equitable, and the trial court, as a matter of law, should have so found.

The opinion of the Court of Appeals rendered on June 3, 1977, reversing this action is set aside and held for naught, and the judgment of the Marshall Circuit Court dismissing appellee's claim is affirmed.

All concur, except JONES, REED and STEPHENSON, JJ., who dissent on the basis that the review was improvidently granted.